1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   J & J SPORTS PRODUCTIONS,          NO. CIV. 2:10-2517 WBS KJN
     INC.,
13
                Plaintiff,              MEMORANDUM AND ORDER RE:
14                                      MOTION FOR PARTIAL SUMMARY
          v.                            JUDGMENT
15
     CARMEN DELGADO, individually
16   and d/b/a SUPER BURRITO
     TACQUERIA,
17
                Defendant.
18   _____/

19
                            ----oo0oo----
20

21        Plaintiff J & J Sports Productions, Inc., brought this

22   action against defendant Carmen Delgado, individually and doing

23   business as Super Burrito Taqueria, arising from defendant's

24   allegedly unauthorized public exhibition of a televised sporting

25   event.  Defendant now moves for partial summary judgment on

26   defendant's liability for violation of federal anti-piracy law

27   and conversion pursuant to Federal Rule of Civil Procedure 56.

28   ///

                                  1

I.   <u>Relevant Facts</u>

Plaintiff was granted the "exclusive nationwide commercial distribution (closed-circuit) rights" to "'Number One': The Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program" ("Program"), which was televised on September 19, 2009.  (Compl. ¶ 9 (Docket No. 1).)  These rights included not only the match between Mayweather and Marques, but also several "undercard matches."  (Gagliardi Aff. ¶¶ 3, 7, Ex. 1 at 1 (Docket No. 19).)  One of these undercard matches was a match between Chris John and Rocky Juarez.  (<u>Id.</u> ¶ 7.)  Plaintiff subsequently entered into sublicensing agreements with commercial entities in the hospitality industry, including restaurants, authorizing the sublicensees to publicly exhibit the Program. (<u>Id.</u> ¶ 3.)

Plaintiff is the owner of Super Burrito Taqueria, a restaurant located at 90 W. Court Street in Woodland, California. (Delgado Decl. ¶ 2 (Docket No. 20).)  A residential license to view the Program at Mrs. Delgado's home, located at 382 Bright Day Drive, Woodland, California was purchased through Mrs. Delgado's DISH Network subscription.  (Riley Decl. Ex. A (Docket No. 19).)  The cost of the residential license was $49.95.  (<u>Id.</u>) There was no commercial license issued that would have permitted the Program to be viewed at Super Burrito Taqueria.  (Gagliardi Aff. ¶ 7.)  Such a commercial license would have cost defendant $2,200.  (<u>Id.</u> ¶ 8, Ex. 2.)

According to the affidavit of Jason Alexander submitted by plaintiff, Mr. Alexander visited Super Burrito Taqueria on September 19, 2009, approximately five minutes before its closing

2

1  time, at around 8:00 p.m. (Alexander Aff. at 1 (Docket No. 19).)
2  When he arrived, the eighth round of a boxing match between Chris
3  John and Rocky Juarez was being shown on a television located in
4  the northeast corner of the restaurant. (<u>Id.</u>)  While he did not
5  pay any cover charge to enter the restaurant, he did order two
6  drinks. (<u>Id.</u>)  He further states that there were around thirty
7  other patrons present in the restaurant. (<u>Id.</u> at 2.)

8          Defendant does not dispute that the Program was viewed
9  at Super Burrito Taqueria. (Delgado Decl. ¶¶ 4-7.)  Rather, she
10  contends that her husband had originally planned to view the
11  fight at home. (<u>Id.</u> ¶¶ 4-5.)  Unbeknownst to her, when she fell
12  ill and he had to go into work the night of the Program, he
13  brought their home video box to the restaurant in order to have
14  friends and family gather at the restaurant after it would be
15  closed for the night in order to watch the Program. (<u>Id.</u>)  She
16  states that she, personally, did not show the fight at the
17  restaurant or authorize anyone to do so. (<u>Id.</u> ¶ 6.)  She does
18  not challenge Mr. Alexander's statement that he entered the
19  restaurant as a paying customer and viewed a portion of the
20  Program.

21          On September 16, 2010, plaintiff filed this action
22  against defendant, asserting claims for (1) violation of 47
23  U.S.C. § 605 (unauthorized publication or use of communications);
24  (2) violation of§ 553 (unauthorized reception of cable service);
25  (3) California common law conversion; and (4) violation of
26  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.
27  Code §§ 17200-17210.  Plaintiff now moves for summary judgment as
28  to defendant's liability for violation of §§ 553 and 605 and for

3

1  California common law conversion.

2  II.  <u>Discussion</u>

3          Summary judgment is proper "if the movant shows that
4  there is no genuine dispute as to any material fact and the
5  movant is entitled to judgment as a matter of law."  Fed. R. Civ.
6  P. 56(a).[1]  A material fact is one that could affect the outcome
7  of the suit, and a genuine issue is one that could permit a
8  reasonable jury to enter a verdict in the non-moving party's
9  favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
10 (1986).  The party moving for summary judgment bears the initial
11 burden of establishing the absence of a genuine issue of material
12 fact and can satisfy this burden by presenting evidence that
13 negates an essential element of the non-moving party's case.
14 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).
15 Alternatively, the moving party can demonstrate that the
16 non-moving party cannot produce evidence to support an essential
17 element upon which it will bear the burden of proof at trial.
18 <u>Id.</u>

19         Once the moving party meets its initial burden, the
20 burden shifts to the non-moving party to "designate 'specific
21 facts showing that there is a genuine issue for trial.'"  <u>Id.</u> at
22 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,
23 the non-moving party must "do more than simply show that there is
24 some metaphysical doubt as to the material facts."  <u>Matsushita</u>
25 <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

26 _____

27         [1]  Federal Rule of Civil Procedure 56 was revised and
rearranged effective December 1, 2010.  However, as stated in the
Advisory Committee Notes to the 2010 Amendments to Rule 56,
28 "[t]he standard for granting summary judgment remains unchanged."

1  "The mere existence of a scintilla of evidence . . . will be

2  insufficient; there must be evidence on which the jury could

3  reasonably find for the [non-moving party]." Anderson, 477 U.S.

4  at 252.

5      In deciding a summary judgment motion, the court must

6  view the evidence in the light most favorable to the non-moving

7  party and draw all justifiable inferences in its favor. Id. at

8  255.  "Credibility determinations, the weighing of the evidence,

9  and the drawing of legitimate inferences from the facts are jury

10 functions, not those of a judge . . . ruling on a motion for

11 summary judgment . . . ." Id.

12     A.  Claims under 47 U.S.C. §§ 553 and 605

13     Section 553 provides that "[n]o person shall intercept

14 or receive or assist in intercepting or receiving any

15 communications service offered over a cable system, unless

16 specifically authorized to do so by a cable operator or as may

17 otherwise be specifically authorized by law."  47 U.S.C. § 553.

18 "In other words, section (a)(1) prohibits both illegally

19 receiving cable programming and helping others to illegally

20 receive cable programming by manufacturing or distributing

21 equipment that allows a person to receive cable programming

22 without authorization."  J & J Sports Prods., Inc. v. Manzano,

23 No. C-08-01872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008)

24 (citing 47 U.S.C. § 553(a)(2)).

25     "The Federal Communications Act, 47 U.S.C. § 605 et

26 seq., prohibits commercial establishments from intercepting and

27 broadcasting to its patrons satellite cable programming."

28 Kingvision Pay-Per-View v. Guzman, No. C 09-00217, 2009 WL

5

1475722, at *2 (N.D. Cal. May 27, 2009).  Although § 605 did not
originally address television signal piracy, amendments made to
the statute in the 1980's "extended [its] reach to the
unauthorized reception or interception of television
programming."  DirecTV, Inc. v. Webb, 545 F.3d 837, 843 (9th Cir.
2008).

      Both § 553 and § 605 are strict liability statutes.
Joe Hand Promotions, Inc. v. Estradda, No. 1:10-cv-02165, 2011 WL
2413257, at *7 (E.D. Cal. June 8, 2011).  Under each statute,
aggrieved parties may bring a civil cause of action against
violators.  47 U.S.C. §§ 553(c)(1), 605(e)(3)(A).

      "A signal pirate violates section 553 if he intercepts
a cable signal, he violates section 605 if he intercepts a
satellite broadcast. But he cannot violate both by a single act
of interception."  J & J Sports Prods., 2008 WL 4542962, at *2.
From the undisputed evidence submitted, the Program was accessed
via a satellite provider and the Program was viewed at the Super
Burrito Taqueria by unauthorized use of the home video box
provided to the Delgados by their satellite provider.  (Delgado
Decl. ¶¶ 4-5; Riley Decl. Ex. A.)  Accordingly, the relevant
statute is § 605.  See J & J Sports Prods., Inc. v. 291 Bar &
Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) ("Although
the pleadings do not clearly state that the event originated as a
satellite signal . . . they do assert that the defendants could
not have intercepted the event without electronic decoding
equipment and satellite coordinates necessary to receive the
signal of the Event.  The reference to satellite signals provides
a sufficient basis to establish . . . that the defendants'

1  interceptions violated section 605." (citations omitted)).

2        Because there is no suggestion that defendant used a
3  cable signal to intercept the Program, § 553 is inapplicable.
4  Plaintiff, therefore, is not entitled to summary judgment as to
5  liability under § 553 and the court will deny this part of
6  plaintiff's motion.  See Manzano, 2008 WL 4542962, at *3
7  ("[Defendant's] testimony is clear that he used his cable box
8  from home to watch the fight, and the investigator's declaration
9  gives no indication that a satellite dish was used.  Accordingly,
10 the court declines to enter any damages award pursuant to section
11 605.").

12       It is undisputed that a residential license to view the
13 Program was purchased through the Delgado's satellite provider,
14 and that the Program was shown at Super Burrito Taqueria, a
15 commercial establishment.  Although defendant states that her
16 husband's intention was to watch the Program with friends and
17 family at the restaurant after it was closed for the night, she
18 does not dispute that at least one of the undercard matches was
19 shown at the restaurant while the restaurant was open for
20 business.  Such use was unauthorized, in violation of § 605.

21       Defendant further protests that she was unaware that
22 her husband decided to use their home video box at the restaurant
23 to view the Program there.  However, as noted above, § 605 is a
24 strict liability statute.  If it is later found that defendant
25 acted unknowingly, damages under § 605 may be reduced.  See 47
26 U.S.C. § 605(e)(3)(C)(II)(iii).  This point is irrelevant,
27 however, for determining liability.  Moreover, Mrs. Delgado, who
28 is sued in her capacity doing business as Super Burrito Taqueria,

does not dispute that she, along with her husband, owns and runs
Super Burrito Taqueria.  It was her commercial establishment that
broadcast the Program without authorization and, having chosen
not to organize her business as a corporation or other form that
would create a legal identity separate from its owners, she may
be held liable for its wrongdoing.  See Pinkerton's, Inc. v.
Superior Court, 49 Cal. App. 4th 1342, 1347 (1996) (explaining
that a fictitious business name does not give the business an
identity separate and apart from its owner and that the use of a
dba does not change liability assignments).[2]  She may not,
therefore, escape liability merely by stating that she was absent
on the particular night in questions or did not explicitly
authorize the broadcast of the Program.  Cf. Alvarado, 2011 WL
1740536, at *1, *7 (no liability under § 605 where defendants
"did not own, operate or control the bar at the time of the

_____

    [2] This case is distinguishable from cases where a plaintiff
attempted to hold both a corporation and an individual liable for
violation of § 605.  In those cases, courts have held that
"[i]ndividual liability under the Cable Act requires that the
individual authorize the underlying violations." Joe Hand
Promotions, Inc. v. Alvarado, No. CV F 10-0907, 2011 WL 1740536,
at *7 (E.D. Cal. May 4, 2011) (quoting 291 Bar & Lounge, LLC, 648
F. Supp. 2d at 473).  In other words, in order to establish
individual liability in addition to holding the offending
commercial establishment responsible, the plaintiff must show
that an individual "had a right and ability to supervise the
violations, as well as an obvious and direct financial interest
in the misconduct." Id. (internal quotation omitted); see also
Integrated Sports Media, Inc. v. El Guadalajara, Inc., No. CV
10-2017, 2011 WL 4434165, at *2 (E.D.N.Y. Aug. 30, 2011) (where
charges were brought against both a corporate identity and an
individual, the individual could not be held liable where
"Plaintiff not only fail[ed] to allege that Defendant Maldonado
was present on the night of the violation, but it also [left] out
the necessary allegation that Maldonado authorized or supervised
the violation").  Plaintiff here is merely trying to hold the
organization in violation of anti-piracy laws responsible, not
attempting to assert liability against a separate individual.
Additional allegations are, therefore, not necessary.

1  telecast").[3]  Accordingly, because there is no genuine issue of
2  material fact as to defendant's liability for a violation of §
3  605, the court must grant plaintiff's motion for summary judgment
4  on that claim.

5      B.  Conversion Claim

6          Under California law, conversion requires a showing of
7  (1) ownership of a right to possession of property; (2) wrongful
8  disposition of the property right of another; and (3) damages.
9  See G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., 958 F.2d
10  896, 906 (9th Cir. 1992).  Traditionally, a claim for conversion
11  lay only where the property alleged to be converted was tangible,
12  but "courts in recent years have significantly relaxed this
13  rule."  Don King Prods./Kingvision v. Lovato, 911 F. Supp. 419,
14  423 (N.D. Cal. 1995); DirecTV, Inc. v. Pahnke, 405 F. Supp. 2d
15  1182, 1189-90 (E.D. Cal. 2005) (concluding that the "right to
16  distribute programming via satellite" constituted a "right to
17  possession of personal property" for purposes of a conversion
18  claim under California law and granting plaintiff's motion for
19  summary judgment for conversion).  "Because conversion is a
20  strict liability tort, questions of the defendant's good faith,

21

22          [3]  Defendant indicates that she does not believe that
summary judgment would be appropriate at this time as she wishes
23  to engage in further discovery. (Opp'n to Mot. for Summ. J. at
4:1-2, 5:20-27 (Docket No. 20).)  The court notes, however, that
24  pursuant to the Status Order issued February 25, 2011, discovery
was to be completed by December 1, 2011. (Status Order at 2:20-
25  22 (Docket No. 18).)  Defendant also suggests that there is
"incorrect" information in the Affidavit of Mr. Alexander, but
26  does not disclose what that incorrect information is as defendant
"does not wish to disclose our insider information at this time."
27  (Opp'n to Mot. for Summ. J. at 3:28-4:2.)  Such insinuations do
not create a real dispute of fact, and are not sufficient to
28  defeat a motion for summary judgment.

1  lack of knowledge, motive, or intent are not relevant." <u>Gilman</u>
2  <u>v. Dalby</u>, 176 Cal. App. 4th 606, 615 n.1 (3d Dist. 2009).

3          The parties do not dispute that plaintiff was granted
4  the exclusive domestic commercial exhibition licensing rights to
5  the Program and that it therefore had the right to possession of
6  the property at the time of the events in question, or that
7  defendant misappropriated plaintiff's property rights by showing
8  the Program without authorization.  Accordingly, there is no
9  genuine issue of material fact as to whether defendant is liable
10 for conversion and the court must therefore grant plaintiff's
11 motion for summary judgment on that claim.

12         IT IS THEREFORE ORDERED that plaintiff's motion for
13 summary judgment be, and the same hereby is, GRANTED on the issue
14 of liability for violation of § 605 and conversion and DENIED on
15 the issue of liability for violation of § 553.
16 DATED:  February 2, 2012
17
18 _____
19 WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE
20
21
22
23
24
25
26
27
28