UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | NO. CIV. 2:10-2517 WBS KJN |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| CARMEN DELGADO, individually and d/b/a SUPER BURRITO TACQUERIA, | |
| Defendant. | |

----oo0oo----

Plaintiff J & J Sports Productions, Inc., brought this action against defendant Carmen Delgado, individually and doing business as Super Burrito Taqueria, arising from defendant's allegedly unauthorized public exhibition of a televised sporting event. Defendant now moves for partial summary judgment on defendant's liability for violation of federal anti-piracy law and conversion pursuant to Federal Rule of Civil Procedure 56.
///

1

I.   <u>Relevant Facts</u>

Plaintiff was granted the "exclusive nationwide commercial distribution (closed-circuit) rights" to "'Number One': The Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program" ("Program"), which was televised on September 19, 2009. (Compl. ¶ 9 (Docket No. 1).) These rights included not only the match between Mayweather and Marques, but also several "undercard matches." (Gagliardi Aff. ¶¶ 3, 7, Ex. 1 at 1 (Docket No. 19).) One of these undercard matches was a match between Chris John and Rocky Juarez. (<u>Id.</u> ¶ 7.) Plaintiff subsequently entered into sublicensing agreements with commercial entities in the hospitality industry, including restaurants, authorizing the sublicensees to publicly exhibit the Program. (<u>Id.</u> ¶ 3.)

Plaintiff is the owner of Super Burrito Taqueria, a restaurant located at 90 W. Court Street in Woodland, California. (Delgado Decl. ¶ 2 (Docket No. 20).) A residential license to view the Program at Mrs. Delgado's home, located at 382 Bright Day Drive, Woodland, California was purchased through Mrs. Delgado's DISH Network subscription. (Riley Decl. Ex. A (Docket No. 19).) The cost of the residential license was $49.95. (<u>Id.</u>) There was no commercial license issued that would have permitted the Program to be viewed at Super Burrito Taqueria. (Gagliardi Aff. ¶ 7.) Such a commercial license would have cost defendant $2,200. (<u>Id.</u> ¶ 8, Ex. 2.)

According to the affidavit of Jason Alexander submitted by plaintiff, Mr. Alexander visited Super Burrito Taqueria on September 19, 2009, approximately five minutes before its closing

time, at around 8:00 p.m. (Alexander Aff. at 1 (Docket No. 19).) When he arrived, the eighth round of a boxing match between Chris John and Rocky Juarez was being shown on a television located in the northeast corner of the restaurant. (Id.) While he did not pay any cover charge to enter the restaurant, he did order two drinks. (Id.) He further states that there were around thirty other patrons present in the restaurant. (Id. at 2.)

Defendant does not dispute that the Program was viewed at Super Burrito Taqueria. (Delgado Decl. ¶¶ 4-7.) Rather, she contends that her husband had originally planned to view the fight at home. (Id. ¶¶ 4-5.) Unbeknownst to her, when she fell ill and he had to go into work the night of the Program, he brought their home video box to the restaurant in order to have friends and family gather at the restaurant after it would be closed for the night in order to watch the Program. (Id.) She states that she, personally, did not show the fight at the restaurant or authorize anyone to do so. (Id. ¶ 6.) She does not challenge Mr. Alexander's statement that he entered the restaurant as a paying customer and viewed a portion of the Program.

On September 16, 2010, plaintiff filed this action against defendant, asserting claims for (1) violation of 47 U.S.C. § 605 (unauthorized publication or use of communications); (2) violation of § 553 (unauthorized reception of cable service); (3) California common law conversion; and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210. Plaintiff now moves for summary judgment as to defendant's liability for violation of §§ 553 and 605 and for

3

California common law conversion.

II. <u>Discussion</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. <u>Id.</u>

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

---

[1] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 1, 2010. However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

4

1  "The mere existence of a scintilla of evidence . . . will be
2  insufficient; there must be evidence on which the jury could
3  reasonably find for the [non-moving party]."  Anderson, 477 U.S.
4  at 252.
5         In deciding a summary judgment motion, the court must
6  view the evidence in the light most favorable to the non-moving
7  party and draw all justifiable inferences in its favor.  Id. at
8  255.  "Credibility determinations, the weighing of the evidence,
9  and the drawing of legitimate inferences from the facts are jury
10 functions, not those of a judge . . . ruling on a motion for
11 summary judgment . . . ."  Id.
12      A.   Claims under 47 U.S.C. §§ 553 and 605
13         Section 553 provides that "[n]o person shall intercept
14 or receive or assist in intercepting or receiving any
15 communications service offered over a cable system, unless
16 specifically authorized to do so by a cable operator or as may
17 otherwise be specifically authorized by law."  47 U.S.C. § 553.
18 "In other words, section (a)(1) prohibits both illegally
19 receiving cable programming and helping others to illegally
20 receive cable programming by manufacturing or distributing
21 equipment that allows a person to receive cable programming
22 without authorization."  J & J Sports Prods., Inc. v. Manzano,
23 No. C-08-01872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008)
24 (citing 47 U.S.C. § 553(a)(2)).
25         "The Federal Communications Act, 47 U.S.C. § 605 et
26 seq., prohibits commercial establishments from intercepting and
27 broadcasting to its patrons satellite cable programming."
28 Kingvision Pay-Per-View v. Guzman, No. C 09-00217, 2009 WL

1475722, at *2 (N.D. Cal. May 27, 2009).  Although § 605 did not originally address television signal piracy, amendments made to the statute in the 1980's "extended [its] reach to the unauthorized reception or interception of television programming."  DirecTV, Inc. v. Webb, 545 F.3d 837, 843 (9th Cir. 2008).

Both § 553 and § 605 are strict liability statutes. Joe Hand Promotions, Inc. v. Estradda, No. 1:10-cv-02165, 2011 WL 2413257, at *7 (E.D. Cal. June 8, 2011).  Under each statute, aggrieved parties may bring a civil cause of action against violators.  47 U.S.C. §§ 553(c)(1), 605(e)(3)(A).

"A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception."  J & J Sports Prods., 2008 WL 4542962, at *2. From the undisputed evidence submitted, the Program was accessed via a satellite provider and the Program was viewed at the Super Burrito Taqueria by unauthorized use of the home video box provided to the Delgados by their satellite provider.  (Delgado Decl. ¶¶ 4-5; Riley Decl. Ex. A.)  Accordingly, the relevant statute is § 605.  See J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) ("Although the pleadings do not clearly state that the event originated as a satellite signal . . . they do assert that the defendants could not have intercepted the event without electronic decoding equipment and satellite coordinates necessary to receive the signal of the Event.  The reference to satellite signals provides a sufficient basis to establish . . . that the defendants'

6

interceptions violated section 605." (citations omitted)).

Because there is no suggestion that defendant used a cable signal to intercept the Program, § 553 is inapplicable. Plaintiff, therefore, is not entitled to summary judgment as to liability under § 553 and the court will deny this part of plaintiff's motion. See Manzano, 2008 WL 4542962, at *3 ("[Defendant's] testimony is clear that he used his cable box from home to watch the fight, and the investigator's declaration gives no indication that a satellite dish was used. Accordingly, the court declines to enter any damages award pursuant to section 605.").

It is undisputed that a residential license to view the Program was purchased through the Delgado's satellite provider, and that the Program was shown at Super Burrito Taqueria, a commercial establishment. Although defendant states that her husband's intention was to watch the Program with friends and family at the restaurant after it was closed for the night, she does not dispute that at least one of the undercard matches was shown at the restaurant while the restaurant was open for business. Such use was unauthorized, in violation of § 605.

Defendant further protests that she was unaware that her husband decided to use their home video box at the restaurant to view the Program there. However, as noted above, § 605 is a strict liability statute. If it is later found that defendant acted unknowingly, damages under § 605 may be reduced. See 47 U.S.C. § 605(e)(3)(C)(II)(iii). This point is irrelevant, however, for determining liability. Moreover, Mrs. Delgado, who is sued in her capacity doing business as Super Burrito Taqueria,

7

does not dispute that she, along with her husband, owns and runs Super Burrito Taqueria.  It was her commercial establishment that broadcast the Program without authorization and, having chosen not to organize her business as a corporation or other form that would create a legal identity separate from its owners, she may be held liable for its wrongdoing.  See Pinkerton's, Inc. v. Superior Court, 49 Cal. App. 4th 1342, 1347 (1996) (explaining that a fictitious business name does not give the business an identity separate and apart from its owner and that the use of a dba does not change liability assignments).[2]  She may not, therefore, escape liability merely by stating that she was absent on the particular night in questions or did not explicitly authorize the broadcast of the Program.  Cf. Alvarado, 2011 WL 1740536, at *1, *7 (no liability under § 605 where defendants "did not own, operate or control the bar at the time of the

---

[2] This case is distinguishable from cases where a plaintiff attempted to hold both a corporation and an individual liable for violation of § 605.  In those cases, courts have held that "[i]ndividual liability under the Cable Act requires that the individual authorize the underlying violations."  Joe Hand Promotions, Inc. v. Alvarado, No. CV F 10-0907, 2011 WL 1740536, at *7 (E.D. Cal. May 4, 2011) (quoting 291 Bar & Lounge, LLC, 648 F. Supp. 2d at 473).  In other words, in order to establish individual liability in addition to holding the offending commercial establishment responsible, the plaintiff must show that an individual "had a right and ability to supervise the violations, as well as an obvious and direct financial interest in the misconduct."  Id. (internal quotation omitted); see also Integrated Sports Media, Inc. v. El Guadalajara, Inc., No. CV 10-2017, 2011 WL 4434165, at *2 (E.D.N.Y. Aug. 30, 2011) (where charges were brought against both a corporate identity and an individual, the individual could not be held liable where "Plaintiff not only fail[ed] to allege that Defendant Maldonado was present on the night of the violation, but it also [left] out the necessary allegation that Maldonado authorized or supervised the violation").  Plaintiff here is merely trying to hold the organization in violation of anti-piracy laws responsible, not attempting to assert liability against a separate individual.  Additional allegations are, therefore, not necessary.

telecast").³  Accordingly, because there is no genuine issue of material fact as to defendant's liability for a violation of § 605, the court must grant plaintiff's motion for summary judgment on that claim.

    B.    <u>Conversion Claim</u>

Under California law, conversion requires a showing of (1) ownership of a right to possession of property; (2) wrongful disposition of the property right of another; and (3) damages. See <u>G.S. Rasmussen & Assoc. v. Kalitta Flying Serv.</u>, 958 F.2d 896, 906 (9th Cir. 1992).  Traditionally, a claim for conversion lay only where the property alleged to be converted was tangible, but "courts in recent years have significantly relaxed this rule." <u>Don King Prods./Kingvision v. Lovato</u>, 911 F. Supp. 419, 423 (N.D. Cal. 1995); <u>DirecTV, Inc. v. Pahnke</u>, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law and granting plaintiff's motion for summary judgment for conversion).  "Because conversion is a strict liability tort, questions of the defendant's good faith,

---

³ Defendant indicates that she does not believe that summary judgment would be appropriate at this time as she wishes to engage in further discovery. (Opp'n to Mot. for Summ. J. at 4:1-2, 5:20-27 (Docket No. 20).)  The court notes, however, that pursuant to the Status Order issued February 25, 2011, discovery was to be completed by December 1, 2011. (Status Order at 2:20-22 (Docket No. 18).)  Defendant also suggests that there is "incorrect" information in the Affidavit of Mr. Alexander, but does not disclose what that incorrect information is as defendant "does not wish to disclose our insider information at this time." (Opp'n to Mot. for Summ. J. at 3:28-4:2.)  Such insinuations do not create a real dispute of fact, and are not sufficient to defeat a motion for summary judgment.

lack of knowledge, motive, or intent are not relevant." <u>Gilman v. Dalby</u>, 176 Cal. App. 4th 606, 615 n.1 (3d Dist. 2009).

   The parties do not dispute that plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the Program and that it therefore had the right to possession of the property at the time of the events in question, or that defendant misappropriated plaintiff's property rights by showing the Program without authorization. Accordingly, there is no genuine issue of material fact as to whether defendant is liable for conversion and the court must therefore grant plaintiff's motion for summary judgment on that claim.

   IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, GRANTED on the issue of liability for violation of § 605 and conversion and DENIED on the issue of liability for violation of § 553.

DATED:  February 2, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE